# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs March 28, 2012

## STATE OF TENNESSEE v. BILLY JOE SMITH

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S57337     R. Jerry Beck, Judge**

_____

**No. E2011-01826-CCA-R3-CD - Filed September 20, 2012**

_____

Pursuant to a negotiated plea agreement, Defendant, Billy Joe Smith, pled guilty to: (1) possession of more than one-half ounce of marijuana, a Class E felony; (2) maintaining a dwelling where controlled substances were used or sold, a Class D felony; and (3) two separate counts of possession of drug paraphernalia, a Class A misdemeanor. Due to his prior criminal convictions, Defendant was designated as a Range II multiple offender for each felony conviction, and agreed to a sentence length of four years for each felony. The plea agreement provided for sentences of 11 months and 29 days for each misdemeanor conviction, and for all of the sentences to run concurrently with each other for an effective sentence of four years as a Range II offender. There was no agreement as to the manner of service of the sentence. Following a sentencing hearing, the trial court ordered that Defendant would serve the sentence in the Department of Correction. Defendant has appealed and argues that the trial court should have granted him full probation or split confinement, or ordered the sentences to be served in the community corrections program. Following a thorough review we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Mark D. Harris, Kingsport, Tennessee, for the appellant, Billy Joe Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; H. Greeley Welles, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Defendant and his wife were indicted for the same offenses following an execution of a search warrant at their residence by the Sullivan County Sheriff's Department and the Bristol, Tennessee Vice Unit. Defendant's wife's case was disposed of by a negotiated plea agreement from which no appeal was taken.

On August 18, 2009, the search of Defendant's residence resulted in the seizure from a freezer of over two pounds of marijuana contained in two large grocery bags, and an additional two ounces of marijuana in the bedroom that was packaged for sale. Throughout the home, the officers found various items of drug paraphernalia, which resulted in the charges of one count of possession of scales and baggies as drug paraphernalia to package drugs and one count of possession of pipes as drug paraphernalia to introduce drugs into the human body. The officers also seized, in the backyard, a growing marijuana plant that was approximately three feet tall. Defendant exercised his rights not to answer questions from the officers during the search. However, Defendant subsequently made spontaneous statements in the officers' presence that he was a "heavy" marijuana user and that he sold marijuana in order to pay his bills. The officers also found a ledger in the residence, which contained records of drug purchasing customers and the amounts and costs of marijuana purchased.

At the time of the sentencing hearing, Defendant was 51 years old. The pre-sentence investigation report was admitted into evidence. Defendant had an extensive prior criminal record that was detailed in the report. However, the trial court, for various legitimate reasons, gave no weight at all to certain prior offenses. The prior convictions that were considered as relevant to the sentencing determination were: (1) Felonies - Grand Larceny and Burglary of an automobile, both in 1983; Petit Larceny in 1985; (2) Misdemeanors - two Possession of Marijuana in 1992 and one such conviction in 1980; two DUIs in 1983 and another DUI in 1980; Resisting Arrest and Assault and Battery in 1982; Reckless Driving in 1980; Driving on a Revoked License in 1979; and Possession of a Schedule I Drug (apparently "casual exchange") in 1978. These prior convictions occurred when Defendant was between the ages of 18 and 32.

Defendant presented no proof other than his own testimony. During direct examination he presented his work history, health problems, an explanation for commission of the crimes to which he had pled guilty, and a brief explanation of why he would be a good candidate for full probation or other alternative sentencing. During cross-examination by the State, Defendant gave some details as to his explanation for why he had the marijuana at his home and also refused to reveal the source of the marijuana found in his freezer.

From the testimony at the sentencing hearing, Defendant resided in his home with his wife and his step-daughter, who was 31 years old. Neither Defendant's wife nor his step-daughter were employed. Due to health problems, Defendant could not work and had received social security disability payments of $766.20 per month since October, 2009. That was the sole source of income for the household according to Defendant. Defendant stated that he had had Hepatitis C for 30 years, he was a diabetic, and had high blood pressure, asthma, and sleep apnea. Defendant stated that he worked as a truck driver when his health had permitted him to work.

As to the entirety of Defendant's proof during direct examination as to specific reasons why he should be granted probation or another alternative sentence, the following transpired during the sentencing hearing on July 28, 2011.

Q. And this case has been pending since 2009.

A. Yes, sir.

Q. And you've not received anymore charges while you've been . . .

A. No, sir.

Q. And you've been in court every time you're asked to be here?

A. Yes, sir.

Q. And you're asking Judge Beck to give you probation and/or alternative sentencing?

A. Yes, sir.

Q. And can you tell Judge Beck why you're – why you're asking for that and why you'd be a good candidate?

A. Well, I just – I've got so many health problems and stuff, and I kind of need to be at the house. And, like say, I haven't been in any trouble. And it was just a – just . . .

Like I say, it was my sister-in-law's boy that done this because he was in trouble. And I just thought, you know, I was doing him a

favor. He asked; so just kind of pressured into it. And, well, one thing led to the next and . . .

Q.     Are you going to do this again?

A.     No, sir.

As a point of reference, the pre-sentence investigation report contained Defendant's version of the offenses which he wrote down for the probation officer. Defendant stated that his wife pressured him to obtain marijuana for her nephew, whose father had passed away. The nephew wanted to have marijuana to smoke to calm himself down. Defendant wrote that he later found out his nephew had found himself in trouble with law enforcement and was told by law enforcement he could get out of trouble "if he would [set] someone up."

During cross-examination by the State, Defendant stated that his nephew wanted a pound of marijuana. Defendant admitted that the marijuana plant growing in the backyard was for his own personal use. Defendant admitted that at one time he had sold marijuana from his house, but he was not selling marijuana during the time period when the search warrant was executed. When pressed about all the marijuana and paraphernalia found, Defendant admitted, "I had a few buddies that'd come by and I'd let them have a little bit. But I wasn't – like I say, I wasn't at the school selling it or I wasn't at the store or I wasn't down here on the corner."

Defendant claimed that the "paper with the names on it was from yard sales" but admitted that references to "half-nickels, nickels, and bags" would have nothing to do with a yard sale. As to the inquiry from the prosecutor about Defendant's source for the marijuana, Defendant provided the following testimony on cross-examination,

Q.     Okay. And finally, what . . . Who'd you get the pound of pot from?

A.     I can't say that 'cause, I mean, I can't get somebody else in trouble just like they got me in trouble.

Q.     Okay. So even though you're before the Court and you acknowledge the prior record that you have?

A.     Yes, sir.

Q.     Correct? And even though you tell this Court you're no longer in the business of selling drugs?

A.      Yes, sir.

Q.      That's what you're telling him?  You're not willing to give to this Court who it was that was giving you a pound of marijuana.  Is that correct?

A.      Yes, sir.

The trial court made its ruling immediately after Defendant's testimony:

**THE COURT**:          Both sides ready for the Court to rule?

**[DEFENSE COUNSEL]**: Yes, Your Honor.

                        * * *

**COURT RULING:**

**THE COURT**:          The Defendant has a prior record.  Fairly substantial prior record.  He does have a gap.  He does have serious injury – serious medical problems.

                        But all-in-all, the Court's of the opinion probation/alternative sentencing should be denied.  You'll be required to serve your sentence, Mr. Smith.  The way I . . . He got any time served?  Did you stay in jail any amount of time?

**[PROSECUTOR]**:        One day, Your Honor.

**[DEFENSE COUNSEL]**: Not very – not . . .

**THE COURT**:          One day?  Looks like you'll have about a year and four months to reach an R.E.D., somewhere in that neighborhood.  All right.  That'll be all.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.  *See* Tenn. Code Ann. § 40-35-401 (2006),

Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d) (2006). However, "[t]his presumption is 'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999) (citations omitted); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b)(1)-(7) (2006); *see also Carter*, 254 S.W.3d at 343*; State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

One of Defendant's arguments on appeal is that the trial court did not properly weigh the applicable statutory enhancement and mitigating factors. As correctly pointed out by the State in its brief, the weight assigned to enhancement and mitigating factors by the trial court is no longer a ground for appeal. *Carter*, 254 S.W.3d at 344.

As to his remaining assertions on appeal, Defendant first argues that he should have been sentenced to full probation rather than incarceration, or at least been granted probation with some split confinement or periodic confinement. No defendant is presumed to be a favorable candidate for alternative sentencing. *Id*. at 347. Instead, a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(5), (6) (2006).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. *See* Tenn. Code Ann. § 40-35-303(b); *see also Carter*, 254 S.W.3d at 347. No criminal defendant is automatically entitled to probation as a matter of law. *See* Tenn. Code Ann. § 40-35-303(b), Sentencing Comm'n Comments; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. *See Carter*, 254 S.W.3d at 347; *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the best interests of the defendant and the public. *See State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing *State v. Grear*, 568 S.W.2d 285 (Tenn. 1978)). If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. *See* Tenn. Code Ann. §§ 40-35-303(c), -306(a) (2006).

We note, however, that "[t]he determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is entitled to be considered a favorable candidate for alternative sentencing, the State has the burden of overcoming this consideration with evidence to the contrary. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). Conversely, the defendant has the burden of establishing his or her suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *Id.; see Boggs*, 932 S.W.2d at 477.

Defendant was sentenced as a Range II multiple offender, and therefore was not sentenced as a mitigated or standard offender. Only a defendant who is either a mitigated or standard offender is entitled to be considered a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6) (2006). On May 23, 1985, Defendant was convicted of the felony offense of petit larceny, which occurred on November 29, 1983. On July 21, 1983, Defendant was convicted of grand larceny for an offense that occurred on February 4, 1983. In the case *sub judice*, Defendant was sentenced for two felony offenses

that occurred in 2009. Therefore, Defendant was not a favorable candidate for any alternative sentencing.

The Community Corrections Act was meant to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40-36-103(1) (2006); *see also State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1)(A)-(F) (2006). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. *See* Tenn. Code Ann. § 40-36-106(a)(2) (2006).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c) (2006).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. *See State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. *See* Tenn. Code Ann. § 40-36-106(d) (2006).

While the trial court was obligated to consider all forms of alternative sentencing, including community corrections, Defendant still had the burden to show he was entitled to some form of alternative sentencing, since he was not entitled to be considered a favorable candidate for alternative sentencing. Although Defendant testified as to his multiple health problems, he offered virtually no evidence to meet his burden to establish that an alternative sentence would be appropriate. He did not even mention or argue in the trial court regarding a sentence to the community corrections program.

Defendant also argues that the trial court erroneously failed to apply certain mitigating factors. Again, the record reflects that these factors were not argued to the trial court as being applicable. The length of the sentences were set by the negotiated plea agreement. With the proof of Defendant's prior criminal record, even if the trial court erred by not finding these mitigating factors applicable as to setting the manner of service of the sentence, the error would be harmless.

The State argues that the trial court made adequate findings and conclusions for the sentencing to be entitled to the presumption of correctness. *See Carter*, 254 S.W.3d at 344-45. We do not agree with the State. As the quote above from the transcript shows, the trial court's stated reasoning for its ruling is lacking. However, there are enough findings by the trial court during the hearing, and enough evidence from the uncontradicted evidence in the pre-sentence report, for us to comfortably affirm the judgments of the trial court upon our *de novo* review, even without a presumption of correctness. Defendant is not entitled to relief in this appeal.

**CONCLUSION**

The judgments of the trial court are affirmed.

                          _____

                          THOMAS T. WOODALL, JUDGE